STATE OF MISSISSIPPI *v.* WILLIAM A. CRAWLEY.

1. INTOXICATING LIQUORS. *Hard cider.* *Laws* 1898, *p.* 17.

It is unlawful in prohibition counties to sell, as a beverage, hard cider, made from the fermented juice of apples, containing from two and one-half to five per centum of alcohol, and the act of 1898 (Laws 1898, p. 17) does not authorize such sale.

2. SAME. *Laws* 1898, *p.* 17.

The act of 1898 (Laws 1898, p. 17), imposing a privilege tax on each dealer in cider, "except pure apple cider of domestic growth," does not exempt "alcoholic cider from fermentation" in counties where the sale of intoxicating liquors is not prohibited.

FROM the circuit court of Coahoma county.

HON. F. A. MONTGOMERY, Judge.

The opinion states the case.

*Wiley N. Nash,* attorney-general, for the state.

Under our law, anything containing alcohol and that is sold as a beverage, is condemned, and such sale is illegal.　We think this case falls within the principles laid down in *Reyfelt* v. *State,* 73 Miss., 415; *Bertrand* v. *State,* 73 Miss., 55.　Under the very terms of our statute and our own decisions, the sale in this case is a violation of law.　In the "Encyclopedia Britannica" (9th ed.), "Cider" is thus defined: "Cider is an alcoholic beverage obtained by fermentation of the juice of apples."

*Cooper & Waddell,* for appellee.

The decisions are not in harmony on the question whether cider is an alcoholic liquor, within the meaning of the statutes against retailing. *Eureka Vinegar Co.* v. *Gazette Printing Co.,* 35 Fed. Rep., 570; *State* v. *Oliver,* 26 W. Va., 422. It may safely be conceded that the courts, prior to the acts of 1898, would or might have held that cider was an alcoholic or intoxicating liquor within the meaning of our statute. The question for decision is whether it is such an alcoholic drink since the adoption of the revenue act of February 11, 1898, that its sale is forbidden without a license being first obtained. Section 43 of the revenue act of 1898 not only imposes a privilege tax of five hundred dollars, but contains provisions which, in their nature, prohibit or regulate dealings in the various liquors named in the section. The section is a revenue measure, be-  cause it levies a tax. It is a police regulation, prescribing the method by which licenses shall be obtained, and regulating the business carried on by the licensee, and it is a prohibitory police regulation, forbidding the sales of the articles intended to be prohibited in those counties which, under the local option statute, had voted against the sale of intoxicating liquors. This legislation, therefore, is strictly *in pari materia* with chapter 37 of the code of 1892, known as the dramshop chapter.

Since no tax is levied upon the sale of pure apple cider of domestic growth, and no license required to be obtained by one desiring to deal in that article, the necessary inference is that the legislature did not intend to forbid its sale in prohibition counties. Believing that the sale of pure apple cider was not attended with injurious consequences, the legislature seems to have determined to permit its unrestricted sale, without taxation, and in all localities. It is common knowledge that the process of fermentation, especially in this climate, soon begins, and that a small per centum of alcohol is produced thereby. With full knowledge of the fact, no distinction was made between fermented and unfermented cider. When the legislature

Opinion of the court.

draws no distinction between fermented and unfermented cider, the courts cannot do so. *State* v. *Spaulding*, 61 Vermont, 505.

We doubt if a man was ever known to become intoxicated in this state from the use of pure apple cider. Certainly it is not a known evil to such an extent as to induce the legislature to prohibit its sale; and accordingly, when we find that body dealing with beverages containing small percentages of alcohol, pure apple cider is certainly dealt with separate and apart from all others, and, as we contend, its sale was deliberately and advisedly removed from all restrictions. The act of 1898 being *in pari materia* with the dram shop chapter of the code, the two acts are to be construed together, the latter act supplementing, amending and limiting the first, and it authorized the sale made by appellee.

If we are correct in our contention " that pure apple cider of domestic growth " may lawfully be sold in the " dry " counties, the next question is whether " pure apple cider," the product of another state, may also be thus sold. We concede that the legislative purpose was to permit only the sale of domestic cider, and to exclude ciders produced in other states. Our position is that since the sale of domestic cider is permitted, the legislature could not exclude cider of like character, namely, pure apple cider, the production of another state. This question is so fully discussed and so clearly decided by the supreme court of the United States, that its elaboration here is deemed unnecessary. *Welton* v. *State of Missouri*, 91 U. S., 275; *Woodruff* v. *Parham*, 8 Wall., 122; *Tiernan* v. *Rinker*, 102 U. S., 123; *Minnesota* v. *Barber*, 136 U. S., 313; *Brimmer* v. *Rebman*, 138 U. S., 78.

Argued orally by *Tim E. Cooper*, for appellee.

TERRAL, J., delivered the opinion of the court.

In the prohibition county of Coahoma, at the April term, 1898, of the circuit court of said county, Crawley was indicted

for selling intoxicating liquors.    There was but a single count
in the indictment, and it charged that Crawley, on the fourth
day of April, 1898, in said county, "did then and there sell
wines, alcoholic, malt, intoxicating, and spirituous liquors,
without any authority so to do, against," etc.    A jury was
waived, and by agreement the case was tried by the judge,
whereupon it was admitted that the defendant, Crawley, had
sold in said county, at the time alleged, a bottle of hard cider,
made from the fermented juice of the apple, and containing
from two and one-half to five per centum of alcohol, and that it
was sold as a beverage.    A verdict and judgment being given
for the defendant, the state appeals from the decision of the
court adjudging said sale to be legal.    The act of February 11,
1898, levied a privilege tax of $500 on each dealer in cider, ex-
cept pure apple cider of domestic growth, and the question is,
whether alcoholic cider from fermentation is included in phrase
"pure apple cider."    Cider is taxed, except pure apple cider
of domestic growth.    That pure apple cider, in the legislative
mind, is something different from cider to be taxed, is quite
plain.    Legislatures, as well as courts, take notice of matters
of common knowledge, and the custom of our farmers of selling
sweet apple cider in the summer and fall was well known to
them, as well as that the character of such drink was pleasant,
wholesome, and unintoxicating.    This domestic cider is gener-
ally, probably always, sweet and unfermented, and the legis-
lature intended that cider, not of domestic growth, should be
conclusively presumed to be fermented or alcoholic cider.    The
legislature was dealing in measures to exclude alcoholic drinks,
and it could not have intended to legalize the sale of alcoholic
cider; and while the purpose of the legislature might have been
expressed in less doubtful terms, we feel constrained to hold
that the sale of hard cider is illegal in prohibition counties, and
in other counties it requires a license tax of $500.

*We think that the defendant should have been convicted upon
the evidence before the court.*